UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------X

THOMAS GESUALDI, ANTHONY D'AQUILA,
LOUIS BISIGNANO, ANTHONY PIROZZI,
JOSEPH A. FERRARA, SR., FRANK FINKEL,
MARC HERBST, DENISE RICHARDSON,
THOMAS CORBETT, and MICHAEL O'TOOLE,
as Trustees and fiduciaries of the Local 282 Welfare,
Pension, Annuity, Job Training, and Vacation and
Sick Leave Trust Funds,

                                Plaintiffs,

            -against-

REINFORCING SUPPLY, LLC,

                                Defendant.

------------------------------------------------------------X

**FILED**
IN CLERK'S OFFICE
U S DISTRICT COURT E D N Y

★      SEP 1 2 2014      ★

**LONG ISLAND OFFICE**

**ORDER**
12-CV-5406 (SJF)(AKT)

FEUERSTEIN, J.

On October 26, 2012, plaintiffs Thomas Gesualdi, Anthony D'Aquila, Louis Bisignano,

Anthony Pirozzi, Joseph A. Ferrara, Sr., Frank Finkel, Marc Herbst, Denise Richardson, Thomas

Corbett and Michael O'Toole, as Trustees and fiduciaries (the "Trustees" or "Plaintiffs") of the

Local 282 Welfare, Pension, Annuity, Job Training, and Vacation and Sick Leave Trust Funds

(collectively, the "Funds"), commenced this action against Reinforcing Supply, LLC

("Reinforcing Supply" or "Defendant"), seeking injunctive and monetary relief under Sections

502(a)(3) and 515 of the Employee Retirement Income Security Act of 1975, as amended

("ERISA"), 29 U.S.C. §§ 1132(a)(3) and 1145. Now before the Court is the Trustees' motion for

summary judgment. For the reasons that follow, the Trustees' motion is granted.

I.    Background[1]

    A.    Factual Background

    Reinforcing Supply is a party to the Local 282 Building Material Supply Industry

Agreement (the "CBA") with Local 282, International Brotherhood of Teamsters ("Local 282"),

which binds Reinforcing Supply to the Restated Agreement and Declaration of Trust for the

Funds (the "Trust Agreement"). (Pl. 56.1 Stmt. ¶¶ 1-2; Bardavid Decl., Ex. A (CBA), at 10).

The Funds are "employee benefit plans" and "multiemployer plans" established to provide

welfare, pension, annuity, job training, and vacation and sick leave benefits to employees

covered by the CBA. (Compl. ¶¶ 4-6; Bardavid Decl., Ex. B (Trust Agreement), at 1). The

Funds are maintained by the Trust Agreement and are administered by the Trustees. (Compl. ¶¶

4, 6).

    The Trust Agreement provides that "[t]he Trustees may at any time audit the pertinent

books and records of any Employer in connection with the [Employer's contributions to the

Trusts]." (Trust Agreement, Art. IX, § 1(d)). Article IX, Section 1(d) of the Trust Agreement

further provides that:

---

[1]    The facts are taken from the undisputed assertions set forth in Plaintiffs' Local Rule 56.1
Statement ("Pl. 56.1 Stmt.") [Docket Entry No. 38], the declaration of Jonathan Bardavid ("Bardavid
Decl.") [Docket Entry No. 40] in support of Plaintiffs' motion for summary judgment, and the exhibits
attached thereto, and my review of the record. While defendant has submitted a "Response to Plaintiffs'
Rule 56.1 Statement" ("Def. 56.1 Stmt.") [Docket Entry No. 43], defendant's 56.1 statement does not
comply with the Local Rules of this Court. Pursuant to Local Rule 56.1(c), "[e]ach statement by the
movant or opponent pursuant to Rule 56.1(a) and (b), including each statement controverting any
statement of material fact, must be followed by citation to evidence." Local Rule 56.1(c). Defendant's
56.1 Statement does not include citations to admissible evidence, and instead, "[d]enies" all but one (1) of
the statements in Plaintiffs' 56.1 Statement and "respectfully refers all legal conclusions to the Court."
(Def. 56.1 Stmt.). "[W]here there are no[] citations or where the cited materials do not support the factual
assertions in the [Rule 56.1] Statements, the Court is free to disregard the assertion." *Holtz v. Rockefeller
& Co., Inc.*, 258 F.3d 62, 73 (2d Cir. 2001) (internal quotation marks and citations omitted). "If the
opposing party [] fails to controvert a fact so set forth in the moving party's Rule 56.1 statement, that fact
will be deemed admitted." *Giannullo v. City of N.Y.*, 322 F.3d 139, 140 (2d Cir. 2003) (citing Local Rule
56.1(c)). Accordingly, the Court disregards the assertions in Defendants' 56.1 Statement and deems
admitted the uncontroverted facts in Plaintiffs' 56.1 Statement.

Pertinent books and records of an Employer include the books and records of any business which is bound by a collective bargaining agreement with the Union which requires contributions to any of the Funds and any other business entity which is affiliated with such business and which either: 1) has employed persons who have performed the same type of work as the employees of the Employer covered by the Union agreement, or 2) is part of a control group of trades or businesses "under common control," as that term is used in 29 U.S.C. § 1301(b)(1) for withdrawal liability purposes, which includes the Employer.

(*Id.*).

On December 27, 2011, the Funds sought to audit Reinforcing Supply for the period September 30, 2010 through September 30, 2011. (Bardavid Decl, Ex. C (Dec. 27, 2011 Audit Letter); Pl. 56.1 Stmt. ¶ 5). On January 17, 2012, the Funds' auditor (the "Funds' Auditor") sent a second letter seeking to audit Reinforcing Supply for the period September 30, 2010 through September 30, 2011. (Bardavid Decl., Ex D (Jan. 17, 2012 Audit Letter); Pl. 56.1 ¶ 6).

On February 15, 2012, the Funds' Auditor met with Reinforcing Supply's accountant to examine Reinforcing Supply's books and records. (Bardavid Decl., Ex. E (N. Mastres Decl.) ¶ 6; Pl. 56.1 Stmt. ¶ 7). During this examination, the Funds' Auditor observed that Reinforcing Supply's corporate tax returns (form 1120S) for 2010 reflected an entry entitled "Due from Affiliated Company." (Bardavid Decl., Ex. E ¶ 7; Pl. 56.1 Stmt. ¶ 8). The Funds' Auditor requested that Reinforcing Supply produce the books and records of the affiliate referenced on Reinforcing Supply's corporate tax return, but "[Reinforcing Supply] refused to provide that information and [the Funds' Auditor] was unable to complete the examination report." (Bardavid Decl., Ex. E ¶¶ 9-10; Pl. 56.1 Stmt. ¶¶ 9-10).

The Funds' Auditor made several follow up requests to Reinforcing Supply's accountant to produce the books and records of the affiliate reflected on Reinforcing Supply's tax return, but Reinforcing Supply did not comply with the Funds' Auditor's additional requests. (Bardavid

Decl., Ex. E. ¶ 11). By letter dated April 10, 2012, the Funds' Auditor informed the Funds that the audit could not be completed because "[Reinforcing Supply's] accountant did not provide books and records of affiliates as reflected on corporate tax returns." (Bardavid Decl., Ex. F (Apr. 10, 2012 Letter from Funds' Auditor to Funds); Bardavid Decl., Ex. E ¶ 12; Pl. 56.1 Stmt. ¶ 12).

On May 14, 2012, counsel for the Funds sent a letter to Reinforcing Supply, stating that "Reinforcing Supply has failed to submit the books and records of its non-signatory affiliates as reflected on its corporate tax returns, for the period commencing September 30, 2010 in accordance with [the CBA]," and "reiterate[ing] [the Trustees'] demand . . . that [Reinforcing Supply] provide the non-signatory affiliates' books and records to audit within ten (10) days of the date of this letter." (Bardavid Decl., Ex. G (May 14, 2012 Letter from Funds' Counsel to Reinforcing Supply); Pl. 56.1 Stmt. ¶¶ 13-14).

On June 5, 2012, James Larkin ("Larkin"), President of Reinforcing Supply, sent a facsimile to counsel for the Funds (the "Larkin Facsimile"), which states:

> The assets in question go back to when Brooklyn Rebar opened and did not have any credit. We purchased some computer software and machinery for them and finally took the transaction off the books this past year. The total amount involved was $23,000. My accountant will supply [the Funds' Auditor] with whatever documentation he needs.

(Bardavid Decl., Ex. H (Larkin Facsimile); Pl. 56.1 Stmt. ¶ 15). Based upon the Larkin Facsimile, an audit was scheduled for July 17, 2012. (Pl. 56.1 Stmt. ¶ 16).[2] However, when the Funds' Auditor met with Reinforcing Supply's accountant on July 17, 2012 to complete the

---

[2]     Notably, paragraph sixteen (16) is the only paragraph in Plaintiffs' 56.1 Statement to which defendants admit. (Def. 56.1 Stmt. ¶ 16).

4

examination, "[Reinforcing Supply] again refused to produce the books and records of affiliate(s) identified on its tax returns." (Bardavid Decl., Ex. E ¶ 15; Pl. 56.1 Stmt. ¶ 17).

On August 23, 2012, counsel for the Funds sent another letter to Reinforcing Supply, with language identical to the May 14, 2012 letter, requesting Reinforcing Supply to produce the books and records of the non-signatory affiliates. (Bardavid Decl., Ex. I (Aug. 23, 2012 Letter from Funds' Counsel to Reinforcing Supply); Pl. 56.1 Stmt. ¶ 18). To date, Reinforcing Supply has not produced the books or records of Brooklyn Rebar, LLC ("Brooklyn Rebar").[3] (Pl. 56.1 Stmt. ¶ 19). Without the books and records of Brooklyn Rebar, the Funds' Auditor "cannot provide the Funds with a complete review of fund delinquencies for [Reinforcing Supply]" because "[t]he records of Brooklyn Rebar are necessary to determine, amongst other things, whether [Reinforcing Supply] is operating a double breasted operation in violation of the CBA and the nature and purpose of the payments between [Reinforcing Supply] and Brooklyn Rebar." (Bardavid Decl., Ex. E ¶ 17).

Reinforcing Supply is owned by four (4) individuals, with Larkin owning thirty-four percent (34%), and Rocco Tomassetti ("R. Tomassetti"), Serafino Tomassetti ("S. Tomassetti"), and Joseph Mitrione ("Mitrione") each owning twenty-two percent (22%). (Bardavid Decl., Ex. M (Larkin Aff.) ¶ 7; Pl. 56.1 Stmt. ¶ 22). Collectively, Larkin, R. Tomassetti, S. Tomassetti, and Mitrione own one hundred percent (100%) of Reinforcing Supply. Reinforcing Supply

---

[3] According to Reinforcing Supply's accountant, "[t]he entries on the tax returns of [Reinforcing Supply to what is termed in the documents as an 'affiliate' concern small transactions with Brooklyn Rebar LLC." (Bardavid Decl., Ex. L (Robert J. Futerman Aff.)). The Larkin Facsimile also identifies the "affiliate" referenced on Reinforcing Supply's tax return as Brooklyn Rebar. (Bardavid Decl., Ex. H).

"employs 1 driver to deliver its products to customers," and owns two (2) trucks[4] for deliveries. (Bardavid Decl., Ex. M ¶ 4; Pl. 56.1 Stmt. ¶ 24).

Larkin, R. Tomassetti, S. Tomassetti, and Mitrione each own twenty percent (20%) of Brooklyn Rebar. (Bardavid Decl., Ex. M (Larkin Affidavit) ¶ 7; Pl. 56.1 Stmt. ¶ 23). Together, Larkin, R. Tomassetti, S. Tomassetti, and Mitrione own eighty percent (80%) of Brooklyn Rebar. Brooklyn Rebar employs one (1) full time driver to deliver "rebar and the products [Brooklyn Rebar] sell[s]" to customers, and owns three (3) trucks[5] for deliveries. (Bardavid Decl., Ex. O (McKinstery Tr.) at 37, 38, 42; Pl. 56.1 Stmt. ¶ 25).

B.     Procedural History

On October 26, 2012, the Trustees initiated this action against Reinforcing Supply, seeking, *inter alia*, an order compelling Reinforcing Supply to "submit to a complete audit for the period commencing September 30, 2010 through the date of the audit by producing, among other necessary records, the pertinent books and records of its non-signatory affiliates," and "[a]warding [the Trustees] reasonable attorneys' fees and costs of this action pursuant to Section 502(g)(2) of ERISA, 29 U.S.C. § 1132(g)(2), and Article IX, Section 3 of the Trust Agreement." (Compl. [Docket Entry No. 1], at 9-10). The Trustees also seek an order requiring Reinforcing Supply to pay, *inter alia*, "any unpaid contributions identified by the audit," plus interest, liquidated damages, and "the cost of the audit," and "estimated contributions in an amount computed under Article IX, sections 1(e) and/or 1(f) of the Trust Agreement," plus interest,

---

[4]     Specifically, Reinforcing Supply owns one (1) flatbed truck for deliveries and one (1) Suburban for small deliveries. (Bardavid Decl., Ex. M ¶ 4).

[5]     While Plaintiffs' 56.1 Statement indicates that Brooklyn Rebar employs one (1) driver and owns three (3) trucks, according to Larkin, "Brooklyn Rebar employs 2 drivers to deliver rebar to customers and owns and operates two tractors and two flatbed trucks." (Bardavid Decl., Ex. M ¶ 6).

liquidated damages, and "the costs incurred in estimating the amounts due." (*Id.*). On January 18, 2013, Reinforcing Supply filed its answer. [Docket Entry No. 9].

On August 30, 2013, this Court granted in part and denied in part the Trustees' motion for discovery. [Docket Entry No. 28]. The Court granted the Trustees' request for leave to conduct discovery to determine "whether Brooklyn Rebar is an affiliate of defendant Reinforcing Supply . . . as that term is defined under the CBA."[6] (*Id.*). The Court denied the remainder of the Trustees' motion as premature, "including the request for leave to conduct discovery to determine whether Brooklyn Rebar is a single employer with, or an alter ego of, Reinforcing Supply." (*Id.*).

On February 7, 2014, following discovery on the limited issue of whether Brooklyn Rebar is an affiliate of Reinforcing Supply, the Trustees moved for summary judgment, seeking an order requiring Reinforcing Supply "to submit to an audit, including producing the books and records of Brooklyn Rebar [], together with awarding the Plaintiffs their costs and attorneys' fees in filing this motion and this action." [Docket Entry No. 37].

II.     Discussion

        A.      Standard of Review

        "Summary judgment must be granted where the pleadings, the discovery and disclosure materials on file, and any affidavits show 'that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law.'" *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011) (quoting Fed. R. Civ. P. 56(a)). "In ruling on a summary judgment

---

[6]     The Court specifically ordered that the Trustees "may conduct discovery to determine: (1) the type of work performed by Reinforcing Supply and Brooklyn Rebar and whether both entities employ truck drivers and other personnel covered by the CBA; and (2) the identity of the owners of Reinforcing Supply and their perspective ownership interests in Reinforcing Supply and Brooklyn Rebar." [Docket Entry No. 28].

motion, the district court must resolve all ambiguities, and credit all factual inferences that could

rationally be drawn, in favor of the party opposing summary judgment and determine whether

there is a genuine dispute as to a material fact, raising an issue for trial." *McCarthy v. Dun &*

*Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007) (internal quotation marks omitted). "A fact

is material if it might affect the outcome of the suit under the governing law, and an issue of fact

is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving

party." *Ramos v. Baldor Specialty Foods, Inc.*, 687 F.3d 554, 558 (2d Cir. 2012) (internal

quotation marks omitted). "Where the record taken as a whole could not lead a rational trier of

fact to find for the nonmoving party, there is no genuine issue for trial." *Ricci v. DeStefano*, 557

U.S. 557, 586, 129 S.Ct. 2658, 174 L.Ed.2d 490 (2009) (quotation marks and citation omitted);

*see also Fabrikant v. French*, 691 F.3d 193, 205 (2d Cir. 2012).

"The moving party bears the burden of establishing the absence of any genuine issue of

material fact." *Zalaski v. City of Bridgeport Police Dep't*, 613 F.3d 336, 340 (2d Cir. 2010). If

this burden is met, "the opposing party must come forward with specific evidence demonstrating

the existence of a genuine dispute of material fact." *Brown*, 654 F.3d at 358. In order to defeat

summary judgment, the non-moving party "must do more than simply show that there is some

metaphysical doubt as to the material facts and may not rely on conclusory allegations or

unsubstantiated speculation." *Id.* (internal quotation marks and citations omitted).

B.     The Trustees' Right to an Audit Pursuant to the Trust Agreement

Section 515 of ERISA requires "[e]very employer who is obligated to make contributions

to a multiemployer plan under the terms of a . . . collectively bargained agreement . . . make such

contributions in accordance with the terms and conditions of such . . . agreement." 29 U.S.C. §

1145. Section 502(a)(3) provides that a fiduciary may bring a civil action "to enjoin any act or

practice which violates any provision of this subchapter or the terms of the plan," or "to obtain other appropriate equitable relief . . to redress such violation or . . . to enforce any provision of this subchapter." 29 U.S.C. § 1132(a)(3). In an action brought under Section 502, the Court may award, in addition to monetary damages, "such other legal or equitable relief as the court deems appropriate." 29 U.S.C. § 1132(g)(2)(E). That relief "may include an injunction directing a defendant to comply with a requirement, imposed by a collective bargaining agreement, that the defendant permit and cooperate in the conduct of an audit of its records." *Ferrara v. Pomarc Indus., Inc.*, No. 11-CV-1859, 2013 WL 3990746, at \*4 (E.D.N.Y. Aug. 5, 2013) (quoting *Lanzafame v. Dana Restoration, Inc.*, No. 09-CV-0873, 2010 WL 6267657, at \*13 (E.D.N.Y. Aug. 12, 2010)).

The Trust Agreement explicitly grants the Trustees' the right to conduct an audit of Reinforcing Supply, which includes "the books and records of . . . any other business entity which is affiliated with [Reinforcing Supply] and which . . . has employed persons who have performed the same type of work as the employees of [Reinforcing Supply] covered by the [CBA]." (Trust Agreement, Art. IX, § 1(d)). Notably, Reinforcing Supply's tax records referenced an "affiliate," which Larkin and Reinforcing Supply's accountant have identified as Brooklyn Rebar. (Pl. 56.1 Stmt. ¶¶ 8, 15; Bardavid Decl., Ex. E (N. Mastres Decl.) ¶ 7, Ex. H (Larkin Facsimile), Ex. L (Robert J. Futerman Aff.)). It is undisputed that Reinforcing Supply and Brooklyn Rebar share common ownership. Furthermore, the record is clear that Brooklyn Rebar and Reinforcing Supply both employ truck drivers, which is covered by the CBA.[7] Therefore, Brooklyn Rebar is "affiliated with" Reinforcing Supply as that term is defined in the Trust Agreement. *See Ferrara v. All Am. Trucking Servs., Inc.*, No. CV-11-1157, 2012 WL

---

[7]    *See e.g.*, CBA at 1 (setting wages of Tier 1 and Tier 2 "Drivers"); *id.* at 4 ("Driver to receive one (1) hour travel time if he finishes work at a different yard.").

1042936, at *3 (E.D.N.Y. Feb. 17, 2012) (holding that "there is a sufficient basis for concluding that the Affiliated Companies are 'affiliated with' [defendant]" where "the Affiliated Companies shared the same principals as [defendant] and performed driving work which is covered by the CBA"), adopted, 2012 WL 1041840 (E.D.N.Y. Mar. 28, 2012); Pomarc, 2013 WL 3990746, at *4 (concluding company was affiliated with defendant because, inter alia, it shared common ownership and employed truck drivers).

Accordingly, based on the language of the Trust Agreement, the Trustees are entitled to an audit of Reinforcing Supply, which includes an audit of the books and records of Brooklyn Rebar.[8] See e.g., Pomarc, 2013 WL 3990746, at *1 (ordering "defendant to submit to an audit of the books and records of its affiliate"); Finkel v. Millennium Fire Servs., LLC, No. 09 CV 540, 2011 WL 866995, at *15 (E.D.N.Y. Feb. 16, 2011) ("Based on the claim that Protection is an affiliate performing covered work, the plaintiff is entitled, under the terms of the Trust Agreement, to audit the books and records of Protection."); adopted, 2011 WL 1321986 (E.D.N.Y. Apr. 6, 2011); All Am. Trucking, 2012 WL 1041840, at *1 (ordering "that the defendant and its affiliated companies are directed to permit an audit of their books and records"). It is hereby ordered that Reinforcing Supply submit to an audit, which includes the books and records of its affiliate, Brooklyn Rebar, on or before October 13, 2014.

---

[8]    The Court rejects Reinforcing Supply's argument that the Trustees' motion for summary judgment must be denied because the Trustees "have neglected and are continuing to neglect, the simple, but necessary, task of actually asking Brooklyn Rebar for the documents they seek." (Reinforcing Supply's Memo. in Opp. to Pl.' Mot. for Summ. J. [Docket Entry No. 42], at 3). Similarly, Reinforcing Supply's contention that the Trustees were required to name Brooklyn Rebar as a party to this action is unavailing. (Id. at 4). The Trust Agreement explicitly grants the Trustees the right to audit the books and records of Reinforcing Supply, which includes the books and records of its affiliate, Brooklyn Rebar. The Trustees are not required to request these documents directly from Reinforcing Supply's affiliates, nor are they required to bring an action against Brooklyn Rebar to enforce its contractual rights against Reinforcing Supply. The Court has considered and rejected all of Reinforcing Supply's remaining arguments.

Pursuant to Article IX, Section 1(e) of the Trust Agreement, the Trustees are entitled to its "reasonable attorneys' fees and all costs and disbursements" "in connection with any [] proceeding" seeking a "mandatory injunction directing the Employer to produce its [] books and records for audit." (Trust Agreement, Art. IX, § 1(e)). The Trustees are entitled to such costs even if "it is ultimately determined that no contributions are due and owing to the Funds from the Employer for the period at issue." (Trust Agreement, Art. IX § 3(a)). Accordingly, the Trustees are entitled to all attorneys' fees, costs, and disbursements incurred in connection with this action seeking to compel an audit of Reinforcing Supply, which includes the books and records of Brooklyn Rebar.

The Trustees shall be entitled to any unpaid contributions identified by the audit (or, in the event that Reinforcing Supply fails to submit to the audit as required by this Order, including the books and records of its affiliate, Brooklyn Rebar, to the estimated contributions in an amount computed under Article IX, Sections 1(e) and/or 1(f) of the Trust Agreement), plus interest on the unpaid contributions (whether estimated or identified by the audit), liquidated damages, and reasonable attorneys' fees and costs as set forth in 502(g)(2) of ERISA, 29 U.S.C. § 1132(g)(2), and Article IX, Section 3 of the Trust Agreement.

The Trustees shall inform the Court, on or before November 13, 2014, whether Reinforcing Supply has submitted to the audit as required in this Order, which includes the books and records of its affiliate, Brooklyn Rebar, together with an affidavit detailing the amounts sought for any unpaid contributions, interest, liquidated damages, and reasonable attorneys' fees, costs, and disbursements.

III.    Conclusion

Based upon the foregoing reasons, the Trustees' motion for summary judgment is granted. Reinforcing Supply is directed to submit to an audit, which includes the books and records of its affiliate, Brooklyn Rebar, on or before October 13, 2014. The Trustees shall inform the Court, on or before November 13, 2014, whether Reinforcing Supply has submitted to the audit as required by this Order, which includes the books and records of its affiliate, Brooklyn Rebar, together with an affidavit detailing the amounts sought for any unpaid contributions, interest, liquidated damages, and reasonable attorneys' fees, costs, and disbursements.

**SO ORDERED.**

s/ Sandra J. Feuerstein
_____
Sandra J. Feuerstein
United States District Judge

Dated: September 12, 2014
       Central Islip, New York